UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ROBERTA DUNIVAN-BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:08CV0108 AGF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This action is before this Court[1] for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Roberta Dunivan-Bennett was not disabled and, thus, not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on September 2, 1957, filed for benefits in July 2006, at the age of 49, alleging a disability onset date of February 8, 2006, due to hypertension, hypothyroidism, hypocalcemia, and depression. After Plaintiff's application was denied at the initial administrative level, she requested a hearing before an Administrative Law Judge ("ALJ"), and such a hearing was held on August 29, 2007. By decision dated February 20, 2008, the ALJ found that Plaintiff had the residual functional capacity

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

("RFC") to perform the full range of light work, including her past relevant work as an admissions specialist. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on May 15, 2008. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, she argues that the ALJ erred in failing to find that Plaintiff met the requirements of the deemed-disabling impairment of hypoparathyroidism[2] listed in the Commissioner's regulations, 20 C.F.R., Pt. 404, Subpt. P, App. 1 ("Appendix "); and in not consulting a vocational expert ("VE") regarding whether there were jobs which Plaintiff could perform. Plaintiff requests that the ALJ's decision be reversed and remanded for an award of benefits from July 19, 2006.

## BACKGROUND

**Work History and Medical Record**

Plaintiff had one job in the 15 years prior to applying for benefits -- an admissions specialist for a hospital -- a job she held for about ten months, with her last day of work on

---

[2] Hypoparathyroidism is "the condition produced by greatly reduced function of the parathyroid glands or by their removal . . . . The lack of parathyroid hormone leads to a fall in serum calcium level, which may result in increased excitability of nerves and muscles and, ultimately, in tetany. The plasma phosphate level goes up, and this results in decreased bone resorption and increased bone density. There also may be skin, eye (cataracts), mental, and dental symptoms. http://www.mercksource.com/

2

September 30, 2005. She was paid $8.70 per hour and worked six days a week, ten hours a day. Plaintiff indicated that the position required nine and one half hours of walking and one half hour sitting in each ten-hour shift; and lifting three to five pounds twice during each shift, and 40 pounds once a week. (Tr. at 27, 117.)

**Medical Record**

The Court's review of the record establishes that the ALJ's summary of the medical record, id. 16-19, is complete and accurate. The Court therefore adopts and incorporates the ALJ's summary. Portions of the medical record will be referred to as needed in addressing Plaintiff's arguments. The Court notes that Plaintiff takes no issue with the ALJ's presentation of the medical evidence, and even affirmatively states in her brief that the ALJ presented it well.

**Evidentiary Hearing of August 29, 2007** (Tr. 23-43)

Plaintiff testified that since her surgery in February 2006 to remove her thyroid and all four parathyroids, she had gained 65 pounds. She testified that she was terminated from her job as an admissions specialist because her then-husband kept interfering with her work. Plaintiff stated that the only medical problem she had while working was occasional tonsillitis, a condition she had suffered from her entire life.

Plaintiff testified that after a hysterectomy in February 2005, she had mild depression for which she was given medication. She continued to suffer from tonsillitis and sinusitis. After her February 2006 thyroid surgery, her doctors did not indicate how

the surgery might impact her future ability to work.  Plaintiff testified that the day after surgery she had great difficulty in swallowing, and a feeling that bugs were crawling all over her; her "skin felt like it was jumping."  This was due to the parathyroids not producing any calcium.  Plaintiff said that after the thyroid removal, she had to get her "chemistries" checked every two weeks, but was currently having them checked every week.  Due to her low calcium count, sometimes she felt like she was stepping on needles when she got out of bed in the morning.  At times this even caused her to fall to her knees.  Her joints also hurt and when she drove any distance she had to make numerous stops to get out and walk around.  Plaintiff said that she took a lot of medicine to help raise her calcium count and that her medications were routinely adjusted.

She described her typical day as waking up at 6:00 a.m. and taking her first medication at 6:30.  She then waited for an hour on the couch or recliner before she took more medicine.  She lived alone and her niece cleaned her house for her.  Occasionally, she would shop for groceries but generally her mother would shop for her.  She would drive on trips which should take three hours but usually took her five hours due to the need for frequent stops.  Plaintiff stated that she drove herself to the hearing --  a distance of 95 miles -- stopping five times.

Plaintiff explained that she could not return to work because she had fatigue and difficulty in focusing.  She could sit for 20 to 30 minutes before the pain in her hips and knees caused her to stand up briefly, but usually she had to lie down.  She then described headaches that felt like the back of her head was "just going to blow out."  These

headaches prevented Plaintiff from focusing, as required by her previous job. She indicated that she had suffered from headaches for a little more than a year and that they got worse as time went on. She said that she had blacked out twice, but she was not sure if it was due to the headaches. At times, the headaches required her to go to bed for five to six hours, and this happened two or three times a week or more. Generally, the headaches were worse later in the day and she tried to keep her house dark because the light bothered her. She took Topamax twice a day, Tylenol, and sometimes Aleve for the joint pain.

Plaintiff stated that medication controlled her depression "fairly well." However, the depression did cause crying bouts, intolerance of people in general, and an inability to concentrate on specific tasks. She did not get angry, but did get emotional and cried a lot. She was seeing a psychiatrist and a counselor for the depression.

Plaintiff testified that she did not use motorized carts when shopping because she never purchased that much at once. The maximum weight she could lift from the floor to a table was probably 10 to 12 pounds. Generally, she had hip pain when bending and straightening up. She did not think there was any amount of weight she could lift throughout an eight-hour workday. At times, her hands would clench up into a fist and remain frozen in that position, making it impossible to do anything. Her feet, knees, and hips were the most painful joints; they hurt all the time, sometimes more than other times.

Plaintiff testified that at one point, her medications had her "fairly normal," but she had to be closely monitored -- the wrong dosage could throw her into a "thyroid storm,"

which could cause cardiac arrest. Plaintiff said that more than one doctor had told her that her condition was life long and would never get any better. She had been seeing a psychiatrist for about one and a half years. She currently did not have any income and was being supported by her mother, and she did not get out to visit and had no hobbies.

**ALJ's Decision of February 20, 2008** (Tr. 8-22)

The ALJ found that Plaintiff had the severe impairments of hypertension, hypothyroidism, and hypocalcemia, and the non-severe impairment of an adjustment disorder with depressed mood. The ALJ determined, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the deemed-disabling impairments listed in Appendix 1. The ALJ specifically addressed Listing 9.04, pursuant to which hypoparathyroidism with severe recurrent tetany, recurrent generalized convulsions, or lenticular cataracts is deemed disabling. The ALJ stated that the medical record did not document that Plaintiff met these criteria.

The ALJ then considered Plaintiff's depression and found that it did not meet or medically equal the criteria in Listing 12.04, because neither the "B" criteria nor the "C" criteria were met.[3] The ALJ found that Plaintiff had mild restrictions in activities of daily

---

[3] An affective disorder (Listing 12.04) is presumptively disabling if "A" criteria and "B" criteria are met, or if "C" criteria are met. "A" criteria (medical findings) are met if there is a medically documented persistence of a depressive, manic, or bipolar syndrome. "B" criteria (functional limitations) are met if there is a marked functional limitation in at least two of the following four categories: (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) repeated episodes of decompensation, each of extended duration. "C" criteria are met if the disorder has been of at least two years duration with either (1) repeated episodes of decompensation, (2)

6

living, as shown by her testimony that she drove herself, although slowly; shopped in the grocery store on a limited basis; made simple, easy meals; attended her doctor visits alone; and managed her own money. The ALJ believed that the facts that Plaintiff spoke with family members frequently by phone and that her mother and niece visited regularly supported a finding that Plaintiff had mild difficulties in social functioning. He found that Plaintiff had moderate difficulties with concentration, persistence, or pace, noting that Plaintiff's health problems and family issues were a distraction. The ALJ found no episodes of decompensation.

The ALJ determined that Plaintiff had the RFC to perform the full range of light work and that her non-severe mental impairment did not limit her ability to engage in substantial gainful activity. He stated that no doctor ever found or imposed any long term significant mental or physical limitations upon Plaintiff's functional capacity. Nor was there any medical evidence that Plaintiff had required prolonged hospitalization since her alleged onset date, or any indication that she could not carry ten pounds frequently, 20 pounds occasionally, and sit and/or stand during an eight hour workday, as required for light work.

The ALJ recognized that a report dated March 20, 2006, from the Missouri Family

---

such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or (3) one or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Support Division (Tr. 508-11) indicated that Plaintiff was medically eligible for Medical Assistance benefits on the basis that she was disabled, as of November 18, 2005, the date of her application for benefits, due to severe major affective disorder, depression, and thyroid complications. He stated, however, that he was not bound by that determination because it was not made pursuant to the rules of the Social Security Administration. The ALJ found that the evidence showed that Plaintiff's impairments could cause some of Plaintiff's alleged symptoms but that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of these symptoms was not "entirely credible."

In support of this finding, the ALJ pointed to a statement by a treating physician on December 2, 2006 (Tr. 171-72) that Plaintiff had not returned for follow-up after she was initially seen by him in April 2006, and that she was noncompliant with her treatment for her hypocalcemia. The ALJ also pointed to a December 2, 2006 notation by a consulting physician that on one occasion, Plaintiff was prescribed Prozac but did not take it. In addition, the ALJ stated that Plaintiff's "sporadic work record" and poor earnings record undermined her credibility with regard to her overall motivation to work, and did not support the proposition that but for her alleged impairments, she would be working.

The ALJ observed that at the hearing, Plaintiff answered questions for almost 25 minutes in a very clear and logical manner. She was clearly understandable and did not display outward signs one would associate with an individual suffering severe mental or physical distress.

The ALJ noted an inconsistency between the Plaintiff's testimony that her only

8

work outside the house in the past 15 years had been as an admissions specialist and the report by the Missouri Department of Social Services from March 20, 2006, that indicated that Plaintiff had been a self-employed photographer. The ALJ found Plaintiff's allegations of severely limited daily activities not credible for the same reasons that he found that her allegations of disability were not credible. He stated that he placed "considerable weight" on the opinion evidence from Plaintiff's physicians and the consultative examiner, none of whom placed any limitations on Plaintiff, and gave no weight to a physical RFC assessment prepared by a state-agency non-medical source.

The ALJ found that Plaintiff was capable of performing her past relevant work as an admissions specialist and was thus not disabled as defined by the Social Security Act. He stated that Plaintiff did not sustain her burden of proving that she could not perform her past work as she performed it.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also

9

take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (citation omitted)).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Both the impairment and the inability to engage in substantial gainful employment must last or be expected to last for not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 217-22 (2002).

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and

episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The limitation in the first three functional areas is assigned a designation of either "none, mild, moderate, marked, [or] extreme." Id. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When the degree of limitation in the first three functional areas is "none" or "mild" and is "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." Id. § 404.1520a(d)(1).

The ability to do basic work activities includes the ability for understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. Id. § 404.1521(b).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in Appendix 1. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work as she actually performed it, or as generally required by employers in the national economy. If so, the claimant is not disabled. If she cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform

11

work that is available in the national economy and that is consistent with the claimant's vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular exertional category of work (heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional abilities. Where a nonexertional impairment such as pain significantly limits the claimant's ability to perform the full range of work in a particular category, the Commissioner cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony of a VE on the availability of jobs that a person with the claimant's RFC and vocational factors could perform. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006).

**Listed Impairment**

Plaintiff argues that the ALJ erred in finding that she did not meet or equal Listing 9.04, which, as noted above, provides that an individual shall be found disabled at step three of the sequential evaluation process if the following criteria are met or medically equaled: "Hypoparathyroidism. With A. Severe recurrent tetany; or B. Recurrent generalized convulsions; or C. Lenticular cataracts." The Commissioner acknowledges that Plaintiff's hypertension, hypothyroidism, and hypocalcemia limited her ability to perform work activities. This is consistent with the ALJ's determination that these impairments were "severe" and limited Plaintiff to the performance of only light exertional

work. However, the Commissioner argues that the record did not support limitations greater than those imposed by the ALJ. The Court agrees.

In order for a claimant to show that her impairment matches a listing, the impairment must meet all specified medical criteria. Deckard v. Apfel, 213 F.3d 996, 997 (8th Cir. 2000). The claimant has the burden of showing that she met a listing. Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). Here, there is no evidence to undermine the ALJ's determination at step two that Plaintiff's physical impairments did not meet or equal a listed impairment. The specific references to the medical record that Plaintiff cited in her brief, e.g., Tr. 477, 353, 354, and references showing low calcium levels, do not show the existence of the requirements to meet Listing 9.04. Plaintiff does not challenge the ALJ's assessment of her mental problems.

To the contrary, there is substantial evidence in the record supporting the ALJ's determination that Plaintiff had the RFC to perform light work, including the October 16, 2007, report and medical source statement of consulting physician, Donald Piland, M.D., who examined Plaintiff on October 17, 2007. (Tr. 176-85.) The medical record includes a report from March 4, 2006, showing that a test for tetany (Chvostek's sign) was negative, and an April 26, 2006 neurological examination was normal with intact reflexes, coordination, muscle strength, and tone. (Tr. 481, 458).

The Court notes that the ALJ gave several valid reasons for discounting Plaintiff's allegations of disability. The ALJ noted that Plaintiff stopped working a hospital

13

admissions specialist not due to her alleged impairments, but because her ex-husband harassed her at work. It weighs against Plaintiff's credibility that she stopped working for reasons unrelated to her allegedly disabling impairment. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005). The ALJ also noted that Plaintiff's work record detracted from her credibility. The Eighth Circuit has noted that "a lack of work history may indicate a lack of motivation to work rather than a lack of ability." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (citing Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993)). In addition, the failure to follow a recommended course of treatment also weighs against a claimant's credibility. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).

In sum, a review of the record convinces the Court that the ALJ's decision was "within the available zone of choice" and should not be disturbed. See, e.g., Heino v. Astrue, ___ F.3d ___, 2009 WL 2615293, at *5 (8th Cir. Aug. 27, 2009) (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008)).

**ALJ's Failure to Consult a VE**

Because the ALJ properly found at step four of the evaluation process that Plaintiff failed to meet her burden of showing that she could not perform her past work, there was no need to consult a VE. Lewis v. Barnhart, 353 F.3d 642, 648 (8th Cir. 2003) ("Vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work.") (citations omitted).

## CONCLUSION

The ALJ's determination that Plaintiff is not entitled to benefits is supported by the

14

record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of September, 2009.